PATTERSON, Judge.
Appellant, James Selma Knight, was indicted in a three-count indictment for burglary in the first degree, theft in the first degree, and rape. He was convicted, after a jury trial, on November 8, 1983, of burglary in the first degree and theft in the first degree. A mistrial was declared on the rape charge. His convictions were reversed and the case remanded for a new trial, 478 So.2d 332 (Ala.Crim.App.1985), on the authority of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the prosecution’s failure to disclose exculpatory evidence.[1] Appellant was tried again and convicted on May 14, 1986, of burglary in the first degree and theft in the first degree. The rape charge had been nolprossed prior to the second trial. Appellant was sentenced as a habitual offender to life imprisonment for the theft conviction and life imprisonment without parole for the burglary conviction. He appeals, raising four issues. We find it necessary to address only the voluntariness of the confession issue.
The facts stated in this court’s previous opinion are indistinguishable from the facts established in the record of the second trial now before us, except for the following two facts which do not appear in the opinion, *800 but which were established at the second trial: (1) The exculpatory forensic evidence deliberately withheld by the State in the first trial and made available to appellant in the second trial showed that appellant could not possibly have been the person who “smoked the cigarettes found in the victim’s house”; and (2) the victim told the police that her attacker spoke politely, used good grammar and diction, and spoke with a medium pitched voice with a slight Southern accent.
The voluntariness of the alleged confession was addressed in our first opinion. In that opinion, we found the following:
“The circumstances of the taking of this statement are clearly questionable. In view of our ultimate holding in this case, however, we do not need to decide the question of voluntariness concerning this statement. We include these facts merely to indicate the obvious weaknesses of the State’s evidence, which is vital to the disposition of this case.”
478 So.2d at 333-34.
The question of whether a confession is voluntarily made turns on the totality of the circumstances in each particular case. Moore v. State, 415 So.2d 1210 (Ala.Cr. App.), cert, denied, 415 So.2d 1210 (Ala.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982). The question of whether a confession was obtained by coercion or improper inducement can be determined only by examination of all the attendant circumstances. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed. 2d 433 (1969). Each case must stand or fall on its own merits, for the constitutional inquiry into the issue of voluntariness requires more than a mere “color-matching of cases.” Eakes v. State, 387 So.2d 855, 859 (Ala.Cr.App.1978) (citing Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967)). The true test of determining whether an extrajudicial confession is voluntary is whether the defendant’s will was overborne at the time he confessed, making the confession the product of an irrational intellect and not a of a free will. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Minor v. State, 437 So.2d 651 (Ala.Cr.App.1983). When the trial court has determined the voluntariness of the alleged confession, its holding is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of the evidence and manifestly wrong. Harris v. State, 280 Ala. 468, 195 So.2d 521 (1967); Raines v. State, 428 So.2d 206 (Ala.Cr.App. 1983).
Applying these principles to the totality of the circumstances in the instant case, we conclude that the confession was not voluntarily given.
The undisputed evidence established the following: Appellant is a fourth grade drop-out who has difficulty reading and writing and is essentially illiterate. At the time of the interrogation, appellant was not in custody for the crimes charged in the instant indictment, but was being held in the county jail on another unrelated charge that was later dismissed. The interrogation lasted approximately six hours. During this period, appellant was handcuffed to a chair most of the time. The interrogation was conducted by two detectives, one armed, with other officers randomly coming in to observe. The two detectives, in relay, used a rapid fire questioning technique.
Appellant testified at the suppression hearing as follows: He was allowed to go to the restroom once. He was not given anything to eat, although he asked for food. He asked for an attorney on at least two occasions. He was threatened with a whipping. His testimony in this regard was disputed by the interrogating detectives.
After six hours of continuous, sustained interrogation, appellant gave the following written statement:
“Went to the house and got the car drove 2 miles Stop got out wipe hand prints off. the. car with a towel that I got from the bath room went Into the house through tue living room window took the car key from Bed room went in Batn room left the car wen I saw a Black and White police car went down thu the woods tho hwy 80 this happen Jne 28, 1983.”
*801 The statement itself is incomplete, vague, and lacking in detail. It mentions nothing about the rape. In fact, it was evidenced at trial that appellant, with a great amount of difficulty and much help from the detectives, took twenty-five minutes to write the statement. One of the detectives noted that the confession was written in answer to specific questions. The signatures on the Miranda waiver form and the statement similarly should not go unnoticed. The waiver form was signed in the early morning hours while the statement was signed approximately six hours later. The distinct differences in the signatures indicate a sense of weariness on the part of appellant at the time he signed the statement, which apparently did not exist when the interrogation commenced. Finally, the simple fact that appellant steadfastly denied his guilt for six hours before making the statement adds weight to the questionability of the alleged confession. It was undisputed that the forensic evidence, which was deliberately not disclosed during the first trial, showed that appellant could not have been the person who smoked the cigarettes found in the victim’s house. The only reasonable inference to be drawn from the victim’s testimony is that her attacker smoked the cigarettes while waiting for her to return home. There was no evidence that there was more than one suspect involved. If her attacker smoked the cigarettes and the testimony of the State toxicologist is believed, then appellant could not have been the perpetrator of the crimes. It was also undisputed that the victim said the perpetrator spoke politely, used good grammar and diction, and spoke with a medium pitched voice with a slight Southern accent. Appellant’s oral testimony at the suppression hearing negates any correlation between the victim’s description of her attacker and the appellant. The attorney general concedes that the alleged confession is the only evidence linking appellant to the crime. In our review of the record, we find no evidence of guilt apart from the alleged confession. In fact, all the other evidence points to the innocence of appellant and casts doubt upon the credibility of the alleged confession itself.
Considering the totality of the circumstances in this case, and applying the general rules set out above for determining the voluntariness of a confession, we find the admission of this confession to be contrary to the great weight of the evidence and manifestly wrong. Raines, supra. Thus, we find that the trial court committed reversible error in admitting this confession into evidence. This case is reversed and remanded.
REVERSED AND REMANDED.
All Judges concur.

. At the second trial it became known that at the first trial a former assistant district attorney had deliberately withheld exculpatory evidence from appellant after being ordered by the trial court to disclose any exculpatory evidence in the State’s possession. We condemn such conduct in the strongest terms.