The defendant was indicted and convicted for robbery. Alabama Code 1975, Section 13-3-110. Sentence was 20 years' imprisonment.
 I
On October 14, 1979, the defendant robbed Adell Goree at a Majic Market in Birmingham. Three days later the defendant robbed Shirley McConnell at the same store. Ms. Goree was also present during the second robbery.
The trial judge allowed evidence of the October 14th robbery at the defendant's trial for the October 17th robbery. The defendant argues that this constituted error.
Immediately before the second robbery, when Ms. Goree saw the defendant coming, she said, "Oh my God, Muffin, here he *Page 1340 
comes again." Once inside the store, the defendant said, "Yeah, it's me again, and I'm back." Ms. McConnell testified that then the defendant said "he wanted all the m____ f____ money this time. He's getting tired of robbing these m____ f____ stores and don't never get nothing out of them."
Ms. Goree stated that the defendant entered the store and said, "Yes bitch, I'm back again, and I'm here to get it all." She testified that after the defendant made Ms. McConnell open the cash register he told her, "I want it all, I want it all this time."
In Williams v. State, 350 So.2d 708 (Ala. 1977), it was held that, where a defendant offered no other defense beyond his plea of not guilty and the witness made a positive identification based on her observation of the defendant at the first robbery, the defendant's plea did not place his identity in issue so as to justify the admission of evidence of a subsequent robbery at the same store. In admitting the evidence of the October 14th robbery in the defendant's prosecution for the October 17th robbery the trial judge stated: "but under these present circumstances it goes to aid identification. It's admissible on a plan, scheme, or design. It goes towards identification, . . ." The trial judge also instructed the jury that the purpose of the evidence of the robbery on October 14th was "solely on the question of identification, whether there is identification in this particular case. It is admissible on that point as evidence of identification." In allowing the admission of this evidence, the trial judge appeared to be following the same reasoning adopted by this Court in Williamsv. State, 350 So.2d 707, 708 (Ala.Cr.App. 1977).
 "The State had a lawful right to establish the identity of defendant as the robbery culprit by competent evidence, even though redundant. The fact that she saw him a week later, when he again robbed her, was admissible even though she was positive of the first identification. This second observation of defendant tended to strengthen the first identification and tended to impress the jury that she was not mistaken. The fact that the second observation of defendant was under circumstances involving a second offense of robbery against the same victim did not preclude the State from offering it to establish identity, which burden the State carried."
This reasoning was rejected by our Supreme Court in Williams v.State, 350 So.2d 708 (Ala. 1977), because "merely entering a plea of not guilty without presenting any witnesses, or an alibi, or other defense, did not place identity in issue."Williams, 350 So.2d at 710.
Except for the facts that in Williams the accused was prosecuted for the first robbery and evidence of the subsequent robbery was admitted, while in this case the defendant was tried for the second robbery and evidence of the prior robbery was admitted, this case and Williams are almost identical. However, an analysis of the facts of both cases discloses one significant difference.
In this case, during the first robbery, the defendant said, "Everytime I come in this m____ f____ and you don't have any money I'll be back", and that he would be "back again". InWilliams, the only comment made by the defendant was during the second robbery when he "asked the victim `why did she call the "cops" the last time he had robbed her after he had instructed her not to do so.'" Williams v. State, 338 So.2d 522
(Ala.Cr.App. 1976). Thus, in Williams there was no evidence that the two robberies were committed pursuant to any plan, design, scheme or system. However, the evidence in this case indicates that when the defendant committed the first robbery he intended to rob the store again.
"Evidence of the accused's commission of another crime is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the nowcharged crime and such other crime were committed in keeping with or pursuant to a single plan, design, scheme or system." C. Gamble, McElroy'sAlabama Evidence, Section 69.01 (6) (3rd ed. 1977). See alsoAllen v. State, 380 So.2d 313, 330 (Ala.Cr.App.), *Page 1341 
cert. denied, 380 So.2d 341 (Ala. 1980); McDonald v. State,57 Ala. App. 529, 542, 329 So.2d 583 (1975), cert. quashed,295 Ala. 410, 329 So.2d 596 (1976).
Although the trial judge properly admitted the evidence of the first robbery, he did so for the wrong reason. While he recognized that the evidence of the first robbery was admissible to show plan, scheme or design, apparently his basic reason for admitting the evidence was to prove identity. Because the evidence was admissible to prove plan, design, scheme or system, its admission to prove identity does not constitute reversible error. "(I)f the court's ruling was correct for any reason, it will not be reversed because the court assigned the wrong reason therefor." Harnage v. State,290 Ala. 142, 144, 274 So.2d 352 (1972); Knox v. State,365 So.2d 349, 350 (Ala.Cr.App. 1978). "A correct ruling on evidence will be sustained, though placed on an incorrect ground." Nichols v. State, 276 Ala. 209, 213, 160 So.2d 619
(1964); Nettles v. State, 222 Ala. 236, 237, 132 So. 41 (1931). "(A) correct ruling will not be disturbed because of insufficient or wrong reasons therefor." Thomas v. State,41 Ala. App. 19, 23, 122 So.2d 731, cert. denied, 271 Ala. 700,122 So.2d 736 (1960). "It seems clear enough that `judgments appealed from, not reasons therefor, determine action of reviewing court.'" City of Birmingham v. Williams, 26 Ala. App. 200,203, 155 So. 878 (1934).
 II
The defendant argues that the trial court erred by overruling his objection to the prosecutor's closing argument which suggested that the jury should consider the prior criminal acts of the defendant.
From the record:
 "MR. COLEE (Assistant District Attorney): Very often it seems to me that sometimes juries, especially in criminal cases, you have to put the blinders on them. I know some of you know about horses and all. In order to keep them on the road they put the little blinders on the eyes so they can't look off to the left or right and be distracted or get upset about something. Well, very often it seems to me criminal juries are treated somewhat the same way. They're not allowed to look to the left or look to the right and take in other facts besides that specific crime that we're talking about.
 "MR. SANDEFER (Defense Counsel): Judge, we would object to this as asking the jury to look outside the evidence that's in this case, to look to some other crime or something of that nature.
 "THE COURT: I don't think the argument is directed to that, but I'm going to charge on that particular subject myself. I'll overrule."
Since evidence of the first robbery was properly admitted into evidence in the prosecution of the defendant for a second robbery, the prosecutor could legitimately comment on the evidence of the first robbery. Reedy v. State, 246 Ala. 363,369, 20 So.2d 528 (1945). "All evidence admitted is subject to comment by counsel." Roberts v. State, 346 So.2d 473, 476
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. Atty. Gen.,346 So.2d 478 (Ala. 1977). "The test of legitimate argument is that whatever is based on a fact or facts in evidence is within the scope of proper comment in argument to the jury." Kirklandv. State, 340 So.2d 1139, 1140 (Ala.Cr.App. 1976), cert. denied, Ex parte Kirkland, 340 So.2d 1140 (Ala. 1977).
 III
The defendant argues that the trial judge erred in allowing the in-court identification of the defendant by Ms. Goree, the victim of the first robbery, when Ms. Goree was in the courtroom during the jury selection process.
A hearing on the defendant's motion to suppress was held immediately before trial. Sometime before or during this hearing "the rule" was invoked. Immediately after the hearing, the trial judge overruled the motion, a jury venire was brought in, qualified, and examined on voir dire by the State and defense counsel. The record only reflects that this was done and not the details of what actually occurred. *Page 1342 
After the jury had been selected, defense counsel argued that Ms. Goree's in-court identification of the defendant should not be allowed into evidence because she was seated in the back of the courtroom during the jury selection, because during that time the court identified the parties including the defendant, and because the rule had been invoked.
In overruling the defendant's motion, the trial judge stated:
 "THE COURT: I know of no rule that says a jury — when the rule is declared — the purpose of the rule is so they won't hear testimony. I know of no rule that says when you're striking a jury they can't come in here. As a matter of fact, I and other Judges encourage it just so jurors can see witnesses. Half the time they say John Black or John Smith or Joe Doe and they won't know them from anything. Many is the time, many, many times a juror will recognize a witness and say I know him, but not know his name. I encourage witnesses to come here so jurors can see them and make sure they don't know them or don't have any connection with them.
 "As for the Defendant being here when a witness walks in, the witness could have walked in at any time and seen the Defendant. I know of no rule of law that says because the Defendant is sitting in a Courtroom and a witness comes in the Courtroom — granted, I know that might indicate one way or the other that's the Defendant, even without someone pointing him out. But this woman wasn't even here when the rule was invoked. Just the same, I wouldn't say that was any reason. No one told her about the rule. She wasn't here. She must have arrived sometime after.
 "MR. COLEE: I think she had gone down to the coffee room.
 "THE COURT: She didn't testify in the suppression hearing. I'm going to overrule that."
Before Ms. Goree identified the defendant at trial, defense counsel objected. It was then established that she had seen the defendant three times before the jury selection: (1) when he robbed her the first time, (2) when she and Ms. McConnell were robbed, and (3) in a lineup in which she positively identified the defendant. Ms. Goree testified that while the jury was being selected she never did see the defendant's face.
Usually "the rule" does not contemplate the exclusion of a witness from the process involved in selecting the jury. Wilsonv. State, 52 Ala. 299, 304 (1875) ("(T)he rules does not contemplate the exclusion of a witness because he may have heard the reading of the indictment or other pleading in the cause."). However, even if the rule does apply to the jury selection process or even if it had specifically been invoked and in effect during that time, it was within the discretion of the trial judge to permit Ms. Goree to testify and identify the defendant. "The general rule in Alabama is that the invocation and enforcement of the rule of exclusion of witnesses is a matter within the sound discretion of the trial court and is normally not subject to appellate review (except for an abuse of that discretion)." Chatman v. State, 380 So.2d 351, 353
(Ala.Cr.App. 1980); McElroy at Section 286.01. It is so obvious that the trial judge did not abuse his discretion in this case that we need not further treat this issue.
 IV
Finally, the defendant argues that the trial judge erred in admitting his confession into evidence.
The defendant was fully advised of his constitutional rights, signed a written waiver form and confessed his guilt. He refused to allow his statement to be tape recorded and also refused to sign a written statement of his confession. The defendant now argues that "it is not reasonable to assume that a voluntary statement would have been made and then refuse to sign a written or tape recorded statement."
This argument is without merit. Even where there is credible testimony to the contrary, if the evidence as to the *Page 1343 
voluntariness of a confession is fairly capable of supporting an inference that rules of freedom and voluntariness were observed, the ruling of the trial judge that the confession was voluntary need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371, 1375
(Ala.Cr.App.), cert. denied, Ex parte Thompson, 347 So.2d 1377
(Ala.), cert. denied, 434 U.S. 1018, 98 S.Ct. 740,54 L.Ed.2d 765 (1978). When such a conflict occurs and the trial judge finds that the confession was voluntarily and intelligently made, great weight must be given his judgment. His finding will not be disturbed by this Court unless we are convinced that his conclusion is palpably contrary to the weight of the evidence.Thompson, supra.
The fact that the defendant refused to sign a written confession or refused to allow his statement to be tape recorded does not necessarily indicate that the confession was involuntary. Proctor v. State, 391 So.2d 1092, 1094
(Ala.Cr.App. 1980) (Confession admitted despite fact that defendant refused to sign waiver.)
"The voluntariness of a confession, authorizing its admission into evidence, must be determined by the trial court in the exercise of enlightened discretion." McElroy at Section 200.04 (9). In exercising that discretion and making such a determination, the trial judge may properly consider the credibility of the defendant as well as that of any witness who testified at the suppression hearing.
In ruling that the defendant's confession was admissible, the trial judge stated:
 "THE COURT: Just for the record, I'm going to put in the record that the Court knows from y'all conversation that he's doing 30 years in the penitentiary in Tennessee and that's admissible on the Voir Dire because it goes to credibility since he has taken the stand."
There was no objection to this action by the trial judge and therefore nothing has been preserved for review in this regard.
Additionally, it should be noted that the hearing to determine the voluntariness of the confession was held immediately before trial. At that time the defendant did not testify and offered no evidence to rebut the State's prima facie showing of voluntariness. The trial judge ruled the confession admissible. However, at trial when Sergeant Howard B. Felts was just about to tell the jury what statements the defendant had made, defense counsel requested to be permitted to allow the defendant to testify, outside the presence of the jury "to show the character and nature of the interrogation so as to suppress the confession." Although this irregularity was allowed by the trial judge, it was an allowance within his discretion rather than one to which the defendant was entitled.
 "It is settled in this state that the accused may, before confessions are admitted in evidence, cross examine a witness for the State as to their voluntary character and offer outside evidence on voir dire in contradiction of that produced by the State. Peoples v. State, 256 Ala. 612, 56 So.2d 665; White v. State, supra. It is the right of the accused to controvert evidence in laying such predicate by cross examination, or by evidence aliunde, but such countervailing evidence impeaching the predicate to be successful must be offered on the voir dire, before the confession is admitted. Lockett v. State, 218 Ala. 40, 117 So. 457; Cook v. State, 16 Ala. App. 390, 78 So. 306; Pope v. State, 183 Ala. 61, 63 So. 71; Jackson v. State, 83 Ala. 76, 3 So. 847. If such countervailing evidence is not offered until after the preliminary question of the admissibility of the confession is passed on by the court, it goes to the jury on the credibility of the confession only. Lockett v. State, supra; Cook v. State, supra." Lokos v. State, 278 Ala. 586, 593, 179 So.2d 714 (1965), vacated in part on other grounds, 408 U.S. 935, 92 S.Ct. 2854, 33 L.Ed.2d 749 (1972).
We have answered the questions raised by the defendant on appeal. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 1344